UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

FREDERICK VERNON WILLIAMS,

            Petitioner,

v.

DONALD EMERSON,

            Respondent.

_____/

Case No. 1:19-cv-1071

Honorable Robert J. Jonker

## **OPINION**

        This is a habeas corpus action brought by a federal prisoner under 28 U.S.C. § 2241. A federal district court must conduct an initial review of *habeas corpus* petitions. *See* 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases (applicable to petitions under § 2241 pursuant to Rule 1(b)). If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I.  **Factual allegations**

Petitioner Frederick Vernon Williams is incarcerated with the Federal Bureau of Prisons at the North Lake Correctional Institution in Baldwin, Michigan. Petitioner seeks to challenge the November 27, 2018, finding that he was guilty of a Code 297 violation, which caused Petitioner to lose twenty-seven days of good time. Petitioner states that the alleged violation occurred while he was confined at the Taft Correctional Institution in Taft, California. Petitioner unsuccessfully appealed the Disciplinary Hearing Officer's finding of guilt to the BOP's regional office in Washington, D.C.

Petitioner alleges that on November 19, 2019, a corrections officer at Taft issued an incident report, which accused Petitioner of using the telephone PIN of another inmate, Pedro A. Escobedo-Alvarado, to make a phone call. During the disciplinary hearing, Petitioner denied ever knowing or possessing inmate Escobedo-Alvarado's PIN. Petitioner explained that inmate Escobedo-Alvarado was on the phone with a mutual friend when Petitioner was passing by, and inmate Escobedo-Alvarado handed Plaintiff the phone receiver, allowing Petitioner to speak to the mutual friend. Inmate Escobedo-Alvarado substantiated Petitioner's explanation. In finding Petitioner guilty, the Disciplinary Hearing Officer stated that while Petitioner may not have possessed inmate Escobedo-Alvarado's PIN, Petitioner's conduct in using another inmate's phone account was nonetheless a circumvention of the telephone monitoring system and constituted Telephone Abuse in violation of Code 297.

Petitioner asserts that his case is identical to that of *Valasquez v. Benov*, 2011 WL 2960875 (E.D. Cal. July 20, 2011), which was subsequently affirmed by 518 F. App'x 555 (9th Cir. 2013). In *Valasquez*, the petitioner was charged with letting another inmate use his telephone PIN. During the hearing, the petitioner admitted to allowing another inmate to speak on

2

the phone during his call, but denied giving his PIN to another inmate. Based on the facts, the Disciplinary Hearing Officer reduced the charge from a high severity violation to a moderate severity offense and sentenced the petitioner to thirteen days' disallowance of good conduct time and three months loss of telephone privileges. *Valasquez,* 2011 WL 2960875 at *1.

In determining whether the petitioner's due process rights were violated, the *Valasquez* court noted that the petitioner had been given a copy of the incident report and was advised of his rights. The court also observed that the petitioner subsequently received a disciplinary hearing, where he admitted that he let another inmate talk on the phone during his phone call. The court concluded the petitioner's due process claim lacked merit because he received the process he was due and the hearing officer's decision was supported by "some evidence." *Id.* at *7-8.

On December 15, 2019, Petitioner filed his habeas corpus petition. Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner signed his application on December 15, 2019. (Pet., ECF No. 1, PageID.12.) The petition was received by the Court on December 19, 2019. For purposes of this opinion, I have given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

The petition asserts that the finding of the Disciplinary Hearings Officer is unsupported by the record and the conclusion that Petitioner committed a Code 297 violation is arbitrary. In addition, Petitioner claims that the Bureau of Prisons' conclusion that he failed to

3

specify the relief being sought in his appeal of the Code 297 violation is erroneous. (Pet., ECF No. 1, PageID.6-10.)

## II. 28 U.S.C. § 2241

Ordinarily, a federal prisoner must challenge the legality of his detention by motion under 28 U.S.C. § 2255, but may challenge the manner or execution of his sentence under 28 U.S.C. § 2241. *Hill v. Masters*, 836 F.3d 591, 594 (6th Cir. 2016) (citing *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001)). A claim concerning the computation of good-conduct time can be addressed in a § 2241 petition. *See Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004) ("[Section] 2241 is a vehicle . . . for challenging matters concerning the execution of a sentence such as the computation of good-time credits."). The federal habeas statute provides that the proper respondent for a § 2241 action is "the warden of the facility where the prisoner is being held. *Rumsfeld v. Padilla*, 542 U.S. 426, 427 (2004). Therefore, this Court has jurisdiction over Petitioner's § 2241 action.

The Court must conduct a preliminary screening of the petition pursuant to 28 U.S.C. § 2243. Upon the Court's initial screening, a § 2241 petition will be denied "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)). The Court notes that Petitioner is proceeding without an attorney. At this stage of the proceedings, the Court accepts Petitioner's factual allegations as true and construes all legal claims in his favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

## III. Discussion

As noted above, Petitioner relies on the holding in *Velasquez* to establish that he is entitled to relief. The petitioner in *Velasquez* was initially charged with a Code 297 violation,

which is a high severity offense. Because there was no evidence that Velasquez gave his PIN to another inmate, the Disciplinary Hearings Officer reduced the charge to a Code 397 violation, which is a moderate severity offense. Velasquez received thirteen days' disallowance of good time and three months loss of phone privileges. Petitioner asserts that he should have received the same treatment as Velasquez. Petitioner seeks an order expunging the 297 violation from his record and restoring the twenty-seven days of good time that were disallowed as a result of the 297 violation.

Petitioner asserts that the determination that he was guilty of a 297 violation is arbitrary and not supported by the evidence. This claim implicates Petitioner's right to due process. As the court stated in *Velasquez*:

> Petitioner is only entitled to limited due process considerations with regard to prison disciplinary proceedings. The law concerning a prisoner's Fourteenth Amendment liberty interest in good time credit is set forth in *Wolff v. McDonnell,* 418 U.S. 539 (1974). While the United States Constitution does not guarantee good time credit, an inmate has a liberty interest in good time credit when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. *See id.* at 557.
>
> Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. *Wolff,* 418 U.S. at 539. Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. *Id.* at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. *Bostic v. Carlson,* 884 F.2d 1267, 1269 (9th Cir.1989), citing *Superintendent, etc. v. Hill,* 472 U.S. 445, 454-455 (1984).
>
> When a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Hill,* 472 U.S. at 454; *Wolff,* 418 U.S. at 563-567.
>
> In addition, due process requires that the decision be supported by "some evidence." *Hill,* 472 U.S. at 455, citing *United States ex rel. Vajtauer v. Commissioner of Immigration,* 273 U.S. 103, 106 (1927). In *Hill,* the United States

5

Supreme Court explained that this standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . ." *Id.* "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill* at 457. Even where, as in *Hill,* the evidence in the case "might be characterized as meager," if "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary," those findings must be upheld. *Id.* Thus, if the procedures listed above are afforded to an inmate, and "some evidence" supports the hearing officer's decision, the requirements of due process are satisfied. *Hill,* 472 U.S. at 455; *Bostic v. Carlson,* 884 F.2d at 1269-1270.

*Velasquez*, 2011 WL 2960875, at *7.

Petitioner attaches a copy of the Disciplinary Hearings Officer's report, his appeals, and the denials of those appeals to his petition. (ECF No. 1-1.) A review of the record shows that the Disciplinary Hearings Officer's conclusion that Petitioner was guilty of the charge was supported by the record.

In the hearing report, the Disciplinary Hearing Officer noted that Petitioner received a copy of the hearing report, understood his due process rights, and was ready to proceed. Inmate Escobedo-Alvarez appeared as a witness and provided his statement to the Disciplinary Hearings Officer. The Disciplinary Hearings Officer stated:

> The DHO relied on the officer's written report as well as The Enforcer documents. The officer's written report states, "On 11/19/18 at approximately 0830 hours, I reviewed the recorded telephone calls belonging to inmate Escobedo-Alvaraz, Pedro A. Register Number 55983-298. During the review, I found inmate Williams, Frederick Vernon Register Number 47448-048 accessed the telephone Personal Identification Number (PIN) belonging to inmate Escobedo-Alvarado. The call occurred on 9/12/18 at 1217 hours while in direct contact with telephone 0115216651201468. This number is approved on the telephone lists belonging to inmate Escobedo-Alvarado and inmate Williams. After reviewing and listening to Escobedo-Alvarado and Williams' recorded telephone conversations, I verified and determined that the voice of the caller on 9/12/18 at 1217 hours belongs to inmate Williams. Inmates are assigned their own telephone PIN number and not to be shared with another inmate, which is in violation of the rules and regulations."
>
> The Enforcer documents for Escobedo-Alvarado shows that the phone number (0115216651201468) corresponds to a contact by the name of Jose Rojas and the number was approved on his account on 05/03/2018. The Enforcer documents also include the telephone number under a contact by the name of Renee Rojas-

6

> Castaneda and the phone number was added on 11/15/2018. Call records show that the only person who called this number since 01/12/2018 was Escobedo-Alvarado.
>
> The DHO also relied on Williams' statement during his disciplinary hearing. During the DHO hearing Williams stated, "I don't recall him ever giving me his PIN. He handed me the phone receiver and I talked on the phone." The DHO deemed this statement to be an admission of guilt and not exculpatory. The DHO considered this statement by Williams that Escobedo-Alvarado did not give Williams his PIN number, but Williams' actions of using Escobedo-Alvarado's phone account to use the phone is still a circumvention of the inmate telephone monitoring system. The DHO also relied on the witness' statement. Escobedo-Alvarado stated, "He was walking by, so I let him use the phone so he could speak to the person I was talking to."
>
> Based upon the greater weight of the evidence (the officer's written report, The Enforcer documents and the Inmate's admission of guilt) the DHO is convinced that inmate Williams, Frederick Reg. No. 47448-048, committed the prohibited act of Telephone Abuse, which is a violation of Code 297.

(ECF No. 1-1, PageID.20.)

In the "Reason for Each Sanction or Action Taken" section of the report, the Disciplinary Hearings Officer explained:

> Using another inmate's telephone account circumvented the inmate telephone monitoring procedures, thereby threatening the security and orderly running of the institution. Your actions also hampers staff's ability to properly maintain their areas of responsibility and threatens the safety of staff and inmates. **Sanctions listed above were imposed in an effort to impress on you the gravity of your actions and hopefully deter you from such actions in the future**.
>
> Program Statement 5270.09, Inmate Discipline, states that after careful consideration of all relevant factors, the DHO may impose a loss of privilege sanction not directly related to the offense, provided there is a belief that the **imposed sanction is viewed as having a significant impact on the inmate's future behavior. The DHO believes that other sanctions will have been futile or have had insufficient impact on your behavior. Therefore, the DHO has imposed sanctions in an effort to deter your behavior**.

(emphasis added) (*Id.* at PageID.21.) Petitioner's subsequent appeals to the Administrative Remedy Section and the Officer of the General Counsel were denied. (*Id.* at PageID.25-29.)

It is apparent from the record that Petitioner received due process of law, and that he cannot support a claim that his constitutional rights were violated during the misconduct

7

hearing. The exhibits to the petition show that Petitioner received (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision as required by the Court in *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner received these procedural protections provided by *Wolff*, and if there were "some facts" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985). Petitioner has failed to show that his due process rights were denied.

Petitioner also appears to be claiming that the fact that he was treated differently from the petitioner in *Velasquez* violated his right to equal protection. The Equal Protection Clause requires that all people similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). An individual asserting an equal protection claim must allege that he was treated differently from other similarly situated persons and that the different treatment was not rationally related to a legitimate government interest. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Petitioner does not suggest that he is a member of a suspect class. "[P]risoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998). Petitioner's claim therefore is subject to rational-basis review. *See Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006).

The Sixth Circuit has discussed a distinction in the types of equal protection claims that apply rational-basis analysis:

In typical equal protection cases, plaintiffs "generally allege that they have been arbitrarily classified as members of an 'identifiable group.'" *Engquist* [*v. Oregon Dep's of Agric.*, 553 U.S. 591, 601 (2008)] (quoting *Personal Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). When the identifiable group has been recognized as a suspect or quasi-suspect class, courts examine the classification under a heightened level of scrutiny. *See, e.g., Regents of Univ. of Calif. v. Bakke*, 438 U.S. 265, 290-91 (1978) (opinion of Powell, J.) (treating race as a suspect classification); *Craig v. Boren*, 429 U.S. 190, 197 (1976) (treating gender as a quasi-suspect classification). When the identifiable group has not been recognized as a suspect or quasi-suspect class, courts examine the classification under rational basis review. *See, e.g., Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976) (discrimination based on age).

In contrast, in "class-of-one" claims, "the plaintiff [does] not allege membership in a class or group" but rather simply "alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir.2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a group with whom she shares characteristics, but rather that the defendants simply harbor animus against her in particular and therefore treated her arbitrarily.").

*Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012).

The Supreme Court recently has recognized that rational basis scrutiny is not properly applied to class-of-one claims involving employment decisions and other discretionary decisionmaking:

There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be "treated alike, under like circumstances and conditions" is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008).

The Court was unable to find any Sixth Circuit cases addressing a class-of-one equal protection claim regarding the loss of good time. However, the United States District Court for the District of Arizona addressed a related issue in *Shelton v. Apker*, 2013 WL 3366281, * (Jul. 5, 2013), stating:

> "In our criminal justice system, the Government retains broad discretion as to whom to prosecute." *Wayte v. United States,* 470 U.S. 598, 607 (1985) (internal quotation and citations omitted). The Government's discretion, however, is not unfettered. Claims of selective prosecution are judged according to equal protection standards. *Id.* at 608. A decision to prosecute may not be "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* A petitioner alleging selective prosecution must "show both that the passive enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id.*
>
> Petitioner fails to allege either a passive enforcement system with a discriminatory effect or some motivation by prison staff of a discriminatory purpose. The DHO's decision to discipline Petitioner and allegedly not discipline the other inmate is a discretionary decision he was permitted to make.

*Shelton v. Apker*, 2013 WL 3366281, at *6 (D. Ariz. July 5, 2013).

In a another such case, the United States District Court for the Central District of California stated:

> Petitioner's allegation that other inmates were treated differently for "possessing the same heating device" (Pet. at 4-4a) by itself is insufficient to establish that those inmates were similarly situated to him. (*See* Answer, Cruz Decl. ¶ 7 (BOP discipline-hearing administrator stating that "[e]ach incident report is considered on its own merits and without regard to what another inmate may or may not have been charged with under different circumstances.")); *see Ryan v. Scism*, 474 Fed. Appx. 49, 52-53 (3d Cir. 2012) (per curiam) (rejecting equal-protection claim based on alleged arbitrary charging under either Code 108 or 305 because although petitioner alleged that other inmates "received a lesser sanction than he for the same prohibited act, he failed to offer evidence that [they] were similarly situated to him"). Petitioner has also not shown that any different treatment was intentional or that it lacked a rational basis. *See Boyd v. Fox*, No. CV 15-04403-FMO (DTB), 2016 WL 3869907, at *3-4 (C.D. Cal. June 6, 2016) (in rejecting equal-protection claim based on petitioner's allegation that another inmate "had committed 'the same actions' as him" but was charged with less serious violation, noting that there was "no evidence that he was singled out in violation of his equal protection rights"), *accepted by* 2016 WL 3769330 (C.D. Cal. July 13, 2016).

*Espinoza v. Fox*, 2016 WL 4134515, at *4 (C.D. Cal. Aug. 2, 2016), *judgment entered,* 2016 WL 4151122 (C.D. Cal. Aug. 2, 2016).

In addressing a similar fact pattern, the United States Court of Appeals for the Third Circuit dismissed the petitioner's claim that he had been treated differently from other similarly situated inmates in violation of the Equal Protection Clause because the Bureau of Prisons arbitrarily charged inmates for the possession of a cellular phone under different disciplinary severity levels. The Petitioner alleged that the Bureau of Prisons downgraded the charges of two other inmates for the possession of a cellular phone from the most severe disciplinary level violation under PAC 108, to a moderate disciplinary severity level violation under PAC 305. *Ryan v. Scism*, 474 F. App'x 49, 52–53 (3d Cir. 2012).

> A claimant alleging a violation of the right to equal protection has the burden to prove "the existence of purposeful discrimination." *McCleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). This requires that Ryan prove that he received different treatment from that received by other individuals similarly situated and that BOP acted with discriminatory purpose. *Id*.; *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.,* 587 F.3d 176, 196 (3d Cir.2009). Although Ryan alleged that inmates Hudson and Neagle received a lesser sanction than he for the same prohibited act, he failed to offer evidence that Hudson and Neagle were similarly situated to him. Moreover, Ryan was sanctioned in conformity with the regulation. Accordingly, his equal protection claim fails.

*Id.* (footnotes omitted)

As noted above, Petitioner in this case alleges that he was treated differently from other similarly situated inmates based on the result reached in *Velasquez v. Benov*, 2011 WL 2960875. Petitioner insists that his case is identical to that of Velasquez. Initially, the Court notes that while not actually identical, the two cases do involve a similar fact pattern. Velasquez was convicted of letting another prisoner use the phone during a telephone call he had placed using his PIN, *see Id.* at *1, while Petitioner in this case was convicted of using another inmate's phone account after the call had been placed by the other inmate. However, as noted by the court in

*Espinoza*, the similar fact pattern, by itself, is insufficient to establish that Velasquez was similarly situated to him. Each incident report must be considered on its own merits and without regard to what another inmate may or may not have been charged with under different circumstances. *Espinoza*, at *4. Petitioner fails to demonstrate that the finding that he was guilty of a 297 violation was "intentional and arbitrary discrimination" by the state . . . and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook,* 528 U.S. at 564. As noted above, Petitioner admitted that inmate Escobedo-Alvarado handed him the phone receiver and that he talked on the phone during inmate Escobedo-Alvarado's phone call. The Disciplinary Hearings Officer specifically stated that Petitioner's actions of using Escobedo-Alvarado's phone account to communicate with someone constitutes a circumvention of the inmate telephone monitoring system, regardless of whether he actually possessed inmate Escobedo-Alvarado's PIN.

    Moreover, the record fails to indicate whether Velasquez's prison record was similar to Petitioner's record. Nor is it apparent whether Petitioner's conduct during the time that he was charged with a 297 violation displayed an unwillingness to comply with prison rules and regulations. It is clear from the Disciplinary Hearing Officer's report in this case that he considered the deterrent effect of the sanctions on Petitioner's behavior in deciding on an appropriate sentence. (ECF No. 1-1, PageID.21.) In addition, the facts underlying *Velasquez* occurred several years prior to the facts in the instant case. The clarification and amendment of prison policies over time could easily result in minor differences in the way inmates are charged. Because Petitioner has failed to allege facts showing that his prison misconduct conviction was the result of intentional and arbitrary discrimination, his equal protection claim is properly dismissed.[1]

---

[1] Furthermore, the Court notes that decisions regarding the charging and sanctioning of prison misconducts, like the decision of whom to prosecute in the criminal justice system, *Wayte,* 470 U.S. at 607, involve a certain amount of discretionary decisionmaking. Although *Engquist*, 553 U.S. 591, has not as yet been applied to prisoner misconducts,

Finally, with regard to Petitioner's claim that the Bureau of Prisons erred in finding that he had not asked for specific relief in his appeal, the Court notes that such a claim has no impact on the underlying constitutionality of his prison misconduct conviction. Moreover, the response to Petitioner's appeal to the Office of the General Counsel shows that the merits of his appeal were considered despite his failure to request specific relief. (*Id.* at PageID.29.) Because Petitioner's claims regarding the constitutionality of his November 27, 2018, Code 297 violation conviction lack merit, his § 2241 petition is properly dismissed.

## IV.     Certificate of Appealability

The statute does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process. *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004). Therefore, the Court need not make such a determination.

## **Conclusion**

The Court will enter a judgment dismissing the petition.

Dated:    March 5, 2020                         /s/ Robert J. Jonker
                                                ROBERT J. JONKER
                                                CHIEF UNITED STATES DISTRICT JUDGE

---

it would appear that given the nature of those proceedings, rational basis scrutiny is not properly applied to class-of-one claims such as that brought by Petitioner.